IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | CR No.: 0:05-1308-JFA |
| ) | |
| v. ) | MEMORANDUM |
| ) | OPINION & ORDER |
| RICO REONARD FEASTER ) | |
| _____ ) | |

This matter is before the court upon the defendant's *pro se* motion for compassionate release (ECF No. 194) pursuant to the First Step Act and 18 U.S.C. § 3582(c)(1)(A). The defendant contends that his current medical conditions place him at a higher risk of becoming seriously ill from the COVID-19 virus. He also submits that his stepfather passed away from COVID-19 and that his stepfather was the primary caretaker of his disabled mother. Finally, the defendant argues that he should receive credit for 8 months that he over-served on his original sentence.

The government has responded and the defendant has replied thereto. The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the defendant. For the reasons which follow, the defendant's motion is respectfully denied.

I. STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492 (4th Cir. 2020); *United States v. Martin,*

916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals were to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), provides:

(c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case—

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction...and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

Before the passage of the First Step Act, the United States Sentencing Commission permitted a sentence to be modified due to the defendant's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. *See* U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reasons" other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D).

3

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is as of now no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)," and as a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also*, *Kibble*, 992 F.3d at 331.

Nevertheless, § 1B1.13 provides a framework when evaluating a defendant's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under § 3582(c)(1)(A).

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have fully exhausted all of the administrative rights to appeal a failure of the Bureau of Prisons (BOP) to bring a motion on the defendant's behalf or the lapse of 30 days with no answer from the Warden after a request by the defendant, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

In his motion before this court, the defendant provides a copy of an email from the Warden acknowledging that the defendant requested compassionate release pursuant to § 3582(c)(1)(A) from the Warden on or about October 22, 2020. There is no return letter provided by the defendant which shows the Warden's denial of the request. The government does not dispute that the defendant has satisfied the procedural requirements of § 3582(c)(1)(A).

As it appears to this court that the defendant has fully exhausted his administrative remedies, the court will proceed to review the matter on the merits. Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. See 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

## II.  DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. Under these circumstances, a chronic condition for which the defendant is not expected to

5

recover reasonably may be found to be serious and substantially diminish the ability of the defendant to provide self-care within the correctional institution, even if that condition would not have constituted an extraordinary and compelling reason absent the risk of COVID-19. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

*Extraordinary and Compelling Reasons*

The defendant is now 37 years old and is serving a 30-month sentence for violating the terms of his supervised release. He is currently incarcerated at the Federal Correctional Institution (FCI) in Edgefield, South Carolina and is scheduled to be released on March 11, 2022.

Specifically, the defendant contends he suffers Chron's disease and high blood pressure and this increases his risk of suffering from severe illness if he contracts the COVID-19 virus. According to the government, the BOP medical records indicate that while the defendant does suffer from Chron's disease, it is currently in remission. (ECF No. 201-1). In addition, the CDC does not include Chron's disease as being one of those infirmities that pose an increased risk of illness from COVID-19. That having been said, this court has little difficulty in concluding that the defendant has failed to show "extraordinary and compelling reasons" for his release based upon the existing COVID-19 pandemic.

6

The government has responded and suggests that the defendant's medical ailments do not rise to the level of severity required under the policy statement, nor is it a condition identified by the CDC as increasing a person's risk for developing serious illness from COVID-19. The government also submits that the defendant has failed to establish his condition substantially diminishes his ability to provide self-care against serious injury or death as a result of COVID-19. Thus, the government argues that the defendant has failed to establish an "extraordinary and compelling reason" for a sentence reduction under § 3582(c)(1)(A).

The government sets forth a comprehensive discussion of the strenuous measures the BOP is taking to protect the health of the inmates in its charge and to mitigate the risks of COVID-19. In late December 2020, BOP facilities began receiving initial allotments of COVID-19 vaccines. According to the BOP, as of June 7, 2021, it has distributed more than 190,470 vaccines and administered more than 188,661,000 of them.[1]

For the above reasons, the court determines that the defendant has failed to show that his Chron's disease or high blood pressure substantially diminish his ability to provide self care against serious injury or death as a result of COVID-19.

---

[1] Information regarding the BOP's administration of the COVID-19 vaccine is available at https://bop.gov/coronoavirus/. As of the date of this order, there are no confirmed active cases at FCI Edgefield. *Id.*

*The Defendant's Family Circumstances*

The defendant also appears to rely upon U.S.S.G. § 1B1.13, cmt. n.C, which allows motions of this nature for family circumstances. The defendant contends that his stepfather passed away from COVID-19 and that his stepfather was the primary caretaker of his mother who is disabled. U.S.S.G. § 1B1.13, however, does not cover the defendant's situation.

Additionally, as the government points out, the fact that his stepfather died as a result of COVID-19 actually cuts against his argument that he should be released from the BOP because of his fear of adverse consequences from the COVID-19 pandemic.

This court agrees with the government that the defendant has failed to establish an extraordinary and compelling reason for a reduction on this basis.

III. PROCEDURAL HISTORY

On May 11, 2006, the defendant pleaded guilty pursuant to a written plea agreement (ECF No. 78) to Counts 1 and 7 of a multi-count, multi-defendant Indictment. Count 1 charged the defendant with conspiracy to conspiracy to possess with intent to distribute and distribution of 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846. Count 7 charged him with carrying a firearm during and in relation to, and in furtherance, of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). An Information was filed by the government pursuant to 21 U.S.C. § 851 advising the defendant that he was subject to enhanced penalties as a result of his prior convictions.

8

The U.S. Probation Office prepared a Presentence Report (PSR) (ECF No. 86). The PSR determined the defendant's offense level at 31 and his criminal history category at III. This produced a mandatory minimum sentence on Count 1 of 240 months and 60 months mandatory minimum on Count 7. Absent the mandatory minimums, the Guideline range would have been 135 to 168 months

On September 11, 2006, this court sentenced the defendant to a total term of 300 months consisting of 240 months as to Count 1 and 60 months consecutive as to Count 7. The defendant was also sentenced to a 10-year term of supervision.

In April 2009, this court reduced the defendant's sentence to 211 months based upon the court's grant of the government's motion under Rule 35(b) of the Federal Rules of Criminal Procedure. The defendant's sentence was reduced a second time on April 29, 2009 to 111 months (51 months as to Count 1 and 60 months as to Count 7), based upon Amendment 782 of the U.S. Sentencing Guidelines.

The December 7, 2015 order reducing the defendant's sentence to 111 months specifically provided as follows:

> If the sentence is less than the amount of time the defendant has already served, the sentence is reduced to a "Time Served" sentence. This order becomes effective as of November 1, 2015.

(ECF No. 155).

The defendant was thereupon released to supervision on December 7, 2015. On February 3, 2020, the defendant was arrested for violating the terms of his supervised

release. Specifically, he was alleged to have committed criminal domestic violence, driving under the influence of alcohol, reckless driving, leaving the judicial district without the permission of the U.S. Probation Officer, and use/possession of illegal drugs.

At his supervised release hearing on August 26, 2020, the defendant did not contest the violation for criminal domestic violence and admitted to the remaining violations noted above. Also, the defendant did not argue that he should receive credit for "banked time." This court then revoked the defendant's supervision and sentenced him to 30 months incarceration on the violations.

*Defendant's Request for "Banked Time"*

The defendant alleges that he has "over-served" his revocation sentence. He seeks to received 8 months' credit on his current revocation sentence that he alleges he served after this court reduced his sentence on December 7, 2015 to 111 months pursuant to Amendment 782 (ECF No. 155). Assuming without deciding that the defendant had already served 8 months beyond the 111 months imposed, the defendant cannot ignore the second portion of that order which clearly provided that the reduction resulted in a sentence lower than the amount of time the defendant had already served in custody, then the sentence was reduced to a sentence of time-served. For this reason, the defendant's effort to "bank" the extra months of alleged service is unavailing.

*Post-Sentencing Conduct and Mitigating Evidence*

Courts place significant weight on a defendant's post-sentencing conduct because it "provides the most up-to-date picture of his or her 'history and characteristics.'" *See Pepper v. United States*, 562 U.S. 476, 492 (2011). On a motion to reduce sentence under the First Step Act, a district court must consider the defendant's post-sentencing conduct. *See United States v. McDonald*, 986 F.3d 402 (4th Cir. Jan. 22, 2021).

With regard to post-sentencing conduct, the defendant has not submitted any information with regard to classes he has taken or any other mitigating evidence in his favor.

In addition, the government opposes the defendant's alternative request for an order directing the BOP to transfer him to home confinement under the CARES Act because the court lacks statutory authority to do so.[2] This court agrees and will deny relief on this basis.

## IV.  CONCLUSION

After carefully considering the applicable law, the arguments of the parties, and the record before it, the court concludes that the defendant has not met his burden of establishing that he has an extraordinary and compelling reason such that he is eligible for release under § 3582(c)(1)(A). As the court finds no extraordinary and compelling reason, it is not

---

[2] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. *See* 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. *See* CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")

necessary for the court to address the § 3553(a) factors.

Accordingly, the defendant's motion (ECF No. 194) is respectfully denied.

IT IS SO ORDERED.

June 8, 2021  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge